956 F.2d 1164
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
George G. HENDRICKS, Defendant-Appellant.
 No. 91-5796.
 United States Court of Appeals, Sixth Circuit.
 March 10, 1992.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant George Garland Hendricks appeals from the sentence he received following his guilty plea to a one-count indictment charging distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). The issues on appeal are: (1) whether the district court's factual finding that defendant distributed fifteen ounces of cocaine during early 1988 is supported by the evidence, (2) whether the defendant's sales of fifteen ounces of cocaine in 1988 constitute "relevant conduct" within the meaning of United States Sentencing Guideline ("U.S.S.G.") § 1B1.3, (3) whether the United States Sentencing Commission exceeded the authority granted to it by Congress when it promulgated U.S.S.G. § 1B1.3, and (4) whether U.S.S.G. § 1B1.3, as applied by this court, is in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. For the reasons that follow, we affirm.
 
 I.
 
 2
 The facts in this case are not complex. On October 29, 1990, defendant Hendricks entered a plea of guilty to a one-count indictment charging him with distributing cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1). The alleged sale, which occurred on August 29, 1989, involved one ounce of cocaine.
 
 
 3
 After the preparation of the presentence report, the district court conducted a sentencing hearing on February 4, 1991, at which the government sought to prove that defendant distributed, or caused the distribution of, an additional fifteen ounces of cocaine to Jeff Shipley, the same person to whom the sale mentioned in the indictment was allegedly made. Shipley, called as a witness for the government, testified that defendant and Bobby Frank Andrews, both federal prisoners at the Midway Rehabilitation Center in Knoxville, Tennessee, were distributing cocaine from that institution. Initially, defendant supplied Andrews with cocaine, which Andrews distributed to Shipley in ounce quantities. Shipley testified that, during the first four months of 1988, defendant provided him, either directly or through Andrews, with between fifteen and twenty ounces of cocaine.
 
 
 4
 Mark Dovar, who had also been a resident of Midway Rehabilitation Center during early 1988, testified as a defense witness that Shipley obtained cocaine from an inmate named Manuel, not from the defendant. Bobby Frank Andrews testified that he never sold cocaine to Shipley and that he never saw defendant do so. He did, however, see Shipley with Manuel on occasion. Defendant Hendricks testified in his own behalf and denied the 1988 cocaine sales to Shipley.
 
 
 5
 The government corroborated Shipley's testimony in part by offering evidence that FBI intercepts of pages received by Shipley's digital pager in early 1988 showed contact between Hendricks and Shipley. The contacts occurred in early 1988 during the time when Hendricks was an inmate in the Midway Rehabilitation Center and was allegedly selling cocaine to Shipley. Furthermore, beginning sometime in October 1988, after he agreed to cooperate with authorities, Shipley informed FBI agents that he owed Hendricks between $5,000 and $6,000 for cocaine previously delivered to him. Pursuant to the instructions of FBI agents, Shipley began wearing a tape recorder in meetings with Hendricks, and the tape recorded conversations between Shipley and Hendricks supported the conclusion that Shipley was paying Hendricks for cocaine previously received.
 
 
 6
 After the lengthy sentencing hearing, the district court found that defendant had engaged in the 1988 cocaine sales to Shipley and that these sales amounted to an additional 425 grams of cocaine. Under U.S.S.G. § 2D1.1, the additional sales raised defendant's guideline range from twenty-one to twenty-seven months to a range of sixty-three to seventy-eight months. The court sentenced defendant to a term of imprisonment of seventy-eight months and imposed a term of three years supervised release. This timely appeal followed.
 
 II.
 A.
 
 7
 Defendant Hendricks argues that the proof presented by the government concerning the 1988 sales by defendant to Shipley was not reliable enough to warrant the increased sentence given him. Therefore, he argues, the district court committed clear error in making the factual findings that defendant sold approximately 425 grams of cocaine to Shipley in 1988.
 
 
 8
 The scope of review applicable to this case is found in 18 U.S.C. § 3742(e), which provides:
 
 
 9
 The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
 
 
 10
 As defendant argues, there is a level of reliability below which a district court may not go when it determines the relevant facts applicable to sentencing.
 
 
 11
 In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. 18 U.S.C. § 3661. Any information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy." Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means." Unreliable allegations shall not be considered.
 
 
 12
 U.S.S.G. § 6A1.3, comment. (citations omitted). As this court has put it,
 
 
 13
 [w]e note that due process requires that some evidentiary basis beyond mere allegation in an indictment be presented to support consideration of such conduct as relevant to sentencing.
 
 
 14
 United States v. Smith, 887 F.2d 104, 108 (6th Cir.1989) (emphasis in original).
 
 
 15
 The thrust of defendant's argument on the reliability question is that Shipley, the government's main witness, cannot be believed because of his extensive criminal record and because his testimony is improbable. Unfortunately for the defendant, his criminal record, and the criminal record of his chief supporting witness, Bobby Frank Andrews, is as discrediting as Shipley's. The defendant's felony criminal record dates back to 1958. Andrews has an extensive criminal history involving convictions for counterfeiting, receiving and concealing stolen property, assault and battery with intent to kill, and distributing cocaine. Thus, although Shipley's credibility was open to question, defendant's testimony must be weighed with care because of his obvious self-interest and criminal record. Moreover, while defendant's testimony is bolstered by Andrews' testimony, Shipley's testimony is supported by the evidence of 1988 pager traffic between Hendricks and Shipley and by the tape recorded conversations between the two men concerning Shipley's payments for previous drug transactions.
 
 
 16
 As earlier stated, Mark Dovar, another resident of the Midway Rehabilitation Center, testified that, in 1988, Shipley obtained his cocaine not from the defendant, but from another half-way house resident, Manuel. Although this testimony does support the position of the defendant that Manuel was Shipley's supplier in 1988, it does not account for the pager contacts between defendant and Shipley and does not explain Shipley's payments to defendant on what might be interpreted as a previous account.
 
 
 17
 Defendant also argues that it is unlikely that Shipley's testimony is true because, from October 1988, when Shipley began cooperating with the FBI, to August 29, 1989, when defendant sold Shipley the ounce of cocaine mentioned in the indictment, Shipley met with defendant at least twenty-nine times and only one cocaine transaction resulted. Defendant argues that this fact makes it improbable that Shipley could have bought, or defendant delivered, the 15 ounces allegedly transferred in 1988.
 
 
 18
 The district court was confronted with a swearing match between convicted criminals. The testimony of three of those criminals, viz., defendant, Andrews, and Dovar, was unsubstantiated except insofar as the three men agreed with each other. On the other hand, Shipley was a cooperating government witness whose testimony was substantiated to some degree by the tape recordings he made and by independently obtained evidence of his pager contacts. Under these circumstances, the district court committed no clear error in crediting Shipley's testimony over that of the defendant and his witnesses.
 
 
 19
 This court must give "due regard to the opportunity of the district court to judge the credibility of the witnesses ...," 18 U.S.C. § 3742(e), and it must accept the facts found by the court unless they are clearly erroneous. The district court specifically found Shipley to be a credible witness in this case, and its remarks indicate that it carefully considered all of the factors necessarily to a resolution of the issues before it. If Shipley is a credible witness, as the district court found, then there is reliable proof of the 1988 drug transactions.
 
 B.
 
 20
 Defendant Hendricks also argues that the district court erred in its application of the Guidelines to the facts in this case. Specifically, defendant contends that the fifteen ounces of cocaine he allegedly sold to Shipley in 1988 were not part of the "same course of conduct" as the offense for which defendant was convicted and thus could not be included under U.S.S.G. § 1B1.3 in the sentencing computations.[1]
 
 
 21
 The question of whether past conduct is relevant to the offense of conviction is reviewed under the clearly erroneous standard. United States v. Cockerham, 919 F.2d 286, 289 (5th Cir.1990); United States v. Vazzano, 906 F.2d 879, 883 (2d Cir.1990); United States v. Sleet, 893 F.2d 947, 949 (8th Cir.1990); United States v. Silverman, 889 F.2d 1531, 1539 (6th Cir.1989).
 
 
 22
 Defendant argues that the 1988 drug sales were not part of the same course of conduct for which defendant was convicted because the two transactions or sets of transactions were separated by more than a year. Courts considering the question of the temporal proximity of the offense conduct to other conduct allegedly within the same course of conduct or common scheme or plan have upheld increases to base offense levels based on conduct occurring eighteen months prior to the offense conduct, United States v. Mocciolla, 891 F.2d 13, 15 (1st Cir.1989), and eight to fourteen months prior to the offense conduct, United States v. Santiago, 906 F.2d 867, 872-73 (2d Cir.1990). Yet, "whether two or more transactions may be considered part of the same course of conduct is not determined by temporal proximity alone." Santiago, 906 F.2d at 872. The court may also look to other factors, including whether the transactions were conducted in the same geographical area, United States v. Gooden, 892 F.2d 725, 729 (8th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2594 (1990), whether the illegal drug transactions involve the same purchaser, United States v. Mann, 877 F.2d 688, 690 (8th Cir.1989); United States v. Taplette, 872 F.2d 101, 106 (5th Cir.), cert. denied, 493 U.S. 841 (1989), and whether the transactions involve the same kinds of drugs. In United States v. Lawrence, 915 F.2d 402, 406-08 (8th Cir.1990), it was held that the sentencing court correctly included in its sentencing computations a defendant's distributions of cocaine where the defendant was convicted only of marijuana trafficking. The case for inclusion would be much stronger where, as in the present case, the same kind of drug had been sold by defendant.
 
 
 23
 The facts found by the district court in this case show that defendant reestablished his cocaine supplying relationship with Shipley in August, 1989, somewhat more than a year after a previous course of drug trafficking between the two men in the same general geographical area and involving the same drug. Under these circumstances, the district court's finding that the 1988 and 1989 cocaine sales between the same men were part of the same course of conduct or common scheme or plan was not clearly erroneous.
 
 C.
 
 24
 Finally, defendant Hendricks argues that the inclusion of his 1988 drug trafficking for the purpose of computing his base offense level violated his rights under the Due Process Clause of the Fifth Amendment because U.S.S.G. § 1B1.3 goes beyond the Sentencing Commission's authorizing legislation, because defendant was not given adequate notice of the conduct that would be used to increase his base offense level, and because defendant was not formally convicted of that conduct by proof beyond a reasonable doubt. In support of his arguments, defendant relies upon the dissent in United States v. Miller, 910 F.2d 1321, 1331 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 980 (1991), in which the dissenting judge expressed an opinion that (1) the United States Sentencing Commission had misinterpreted its enabling legislation, particularly 28 U.S.C. § 994(l) (1988), thereby promulgating U.S.S.G. § 1B1.3 beyond the Commission's statutory and constitutional authority, and that (2) this court's application of section 1B1.3 resulted in violations of Fifth and Sixth Amendment rights.
 
 
 25
 In relevant part, 28 U.S.C. § 994(l) provides that:
 
 
 26
 The Commission shall insure that the guidelines promulgated pursuant to subsection (a)(1) reflect--
 
 
 27
 (1) the appropriateness of imposing an incremental penalty for each offense in a case in which a defendant is convicted of--
 
 
 28
 (A) multiple offenses committed in the same course of conduct that result in the exercise of ancillary jurisdiction over one or more of the offenses; and
 
 
 29
 (B) multiple offenses committed at different times, including those cases in which the subsequent offense is a violation of section 3146 (penalty for failure to appear) or is committed while the person is released pursuant to the provisions of section 3147 (penalty for an offense committed while on release) of title 18....
 
 
 30
 (Emphasis added.)
 
 
 31
 Because of the statute's use of the word "convicted," the dissenting judge in Miller was of the view that Congress meant to allow adding an incremental penalty only under circumstances of multiple convictions.
 
 
 32
 The provision of the guideline enabling legislation authorizing "incremental" penalties plainly requires conviction of the offense for which the sentence is imposed. In 28 U.S.C. § 994(l) (1988), Congress allows adding an "incremental penalty" where, but only where, a defendant is "convicted of multiple offenses committed in the same course of conduct," not where a defendant is convicted only of a single offense during a time period in which he may also have committed other offenses for which he is not charged and convicted. The Guidelines should not be read to exceed the authority granted in the enabling legislation.
 
 
 33
 Miller, 910 F.2d at 1329-30 (Merritt, C.J., dissenting) (footnote omitted).
 
 
 34
 The Seventh Circuit has considered and rejected a similar argument in United States v. Ebbole, 917 F.2d 1495, 1501 (7th Cir.1990), by stating:
 
 
 35
 While these arguments represent a possible reading of the enabling legislation, we do not believe that the statutes may fairly be read to preclude the Commission from adopting § 1B1.3. The two provisions at issue are not, as Chief Judge Merritt's view implies, cast in restrictive or exclusive terms. Section 994(1) does not restrict the Commission's power to impose incremental penalties for uncharged conduct; it merely directs the Commission to insure that the Guidelines provide additional penalties when defendants are convicted of multiple offenses.
 
 
 36
 (Emphasis in original.) This certainly seems a reasonable, permissible, reading of 18 U.S.C. § 994(1). Moreover, it is undoubtedly the interpretation of the Sentencing Commission, which has made very clear its view that
 
 
 37
 in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.
 
 
 38
 U.S.S.G. § 1B1.3, comment. (backg'd.); see also id., comment. (n. 2).
 
 
 39
 An agency's interpretation of its own enabling legislation is entitled to deference, and "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the ... agency." Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 843 (1984). The language of section 994(1) does not seem to restrict the Commission's power to impose increased penalties for uncharged conduct, and in the absence of such a clear restriction the Commission's interpretation, as expressed in the Commentary to section 1B1.3, should be accepted.[2]
 
 
 40
 Defendant also argues that section 1B1.3, as applied, violates his rights under the Fifth and Sixth Amendments to the United States Constitution. He relies solely on the dissent in Miller, in which it is stated:
 
 
 41
 Almost the entire spectrum of Fifth and Sixth Amendment rights granted to the accused are denied by the literal reading and enforcement of application note 2 of the Guidelines because, according to its procedure, a defendant may never be informed of the specific charge against him until the probation report issues.
 
 
 42
 Miller, 910 F.2d at 1331. In addition to this problem with lack of notice, the dissent in Miller stated that the Fifth Amendment's Due Process Clause was violated by the application of section 1B1.3 in that events not proven beyond a reasonable doubt--but only by a preponderance of the evidence--could be used to determine the severity of the sentence imposed in the case. The dissent further stated that because In re Winship, 397 U.S. 358, 364 (1970), holds that the Due Process Clause requires that each element of the proof necessary to constitute a crime be established beyond a reasonable doubt, proof by a preponderance of the evidence is unacceptable in sentencing.
 
 
 43
 Most of the courts that have considered this argument have squarely rejected it. The Seventh Circuit has rejected it in United States v. Ross, 905 F.2d 1050, 1054 (7th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 172 (1990), a case in which the district court applied the preponderance of the evidence standard when determining the amount of drugs involved in the offense for sentencing purposes. The court, citing McMillan v. Pennsylvania, 477 U.S. 79 (1986), held that "[p]roof of sentencing factors under the Guidelines by a preponderance of the evidence satisfies due process." Ross, 905 F.2d at 1054.
 
 
 44
 The Fifth Circuit has also rejected defendant's argument in United States v. Byrd, 898 F.2d 450, 452 (5th Cir.1990), citing McMillan v. Pennsylvania in support of its holding that proof beyond a reasonable doubt was not required of previous drug distributions before they were factored into sentencing calculations. The Ninth Circuit has rejected the argument, as well, in United States v. Restrepo, No. 88-3207 (9th Cir. Oct. 4, 1991) (en banc).
 
 
 45
 In McMillan v. Pennsylvania, the Supreme Court considered a due process challenge to a Pennsylvania statute that provided mandatory minimum sentences of five years imprisonment whenever a sentencing judge found by a preponderance of the evidence that a defendant visibly possessed a firearm during the commission of the offense of conviction. The Supreme Court recognized that the state statute did not treat a defendant's visible possession of a firearm as an essential element of the offense, and, accordingly, it held that the state need not prove visible possession of a firearm by clear and convincing evidence, the standard argued for by the petitioners in McMillan. In so holding, the Court noted that it had
 
 
 46
 consistently approved sentencing schemes that mandate consideration of facts related to the crime, e.g., Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), without suggesting that those facts must be proved beyond a reasonable doubt.
 
 
 47
 477 U.S. at 92.
 
 
 48
 This court has most recently considered the question in United States v. Rigsby, 943 F.2d 631 (6th 1991), a case in which a panel of this court disagreed with what it found to be the controlling precedent in this circuit and reluctantly affirmed the judgment of the district court which had followed that controlling precedent. The panel conceded that
 
 
 49
 [r]ecently, this Court held that there is no due process or sixth amendment violation for the district judge, rather than jury, to determine the quantity of drugs involved for offenses under § 841 and to do so under the preponderance of the evidence standard. United States v. Hodges, 935 F.2d 766 (6th Cir.1991). The Court explained that quantity is not an element of the offense. Rather, the question of quantity is raised only in the penalty provisions of § 841 and is therefore properly left to the judge's determination for sentencing. Id. See also United States v. Sawyers, 902 F.2d 1217 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991); United States v. Moreno, 899 F.2d 465 (6th Cir.1990). The issue need not be submitted to a jury and the court may use the preponderance of the evidence standard in making the determination.
 
 
 50
 943 F.2d at 639-40 (emphasis added). After stating its belief that the quantity of drugs is a critical element of the crime defined in 21 U.S.C. § 841, it concluded:
 
 
 51
 For these reasons, we note our disapproval of and disagreement with the above cases, which hold that the quantity of drugs involved in a § 841 offense must be determined by the district court at sentencing applying the preponderance of the evidence standard. Unfortunately, we are bound by this law and must affirm the district court's determination in the instant case.
 
 
 52
 Id. at 643.
 
 
 53
 As the Rigsby panel noted, this court, in United States v. Hodges, 935 F.2d 766 (6th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 251 (1991), reemphasized its position on this question, quoted both Moreno and Sawyers with approval, and concluded, "In sum, our circuit's precedent has explicitly rejected any due process argument...." Id. at 770. Thus, this court's position on the issue is quite clear, and the district court was correct in following the precedent of this circuit.
 
 
 54
 Defendant also argues that due process was denied him in that "[h]e did not know with specificity what the allegations concerning 'relevant conduct' were going to be until he heard them at the sentencing hearing." Brief of Appellant at 11.
 
 
 55
 Federal Rule of Criminal Procedure 32(a)(1) directs that
 
 
 56
 the court shall provide the counsel for the defendant and the attorney for the Government with notice of the probation officer's determination, pursuant to the provisions of subdivision (c)(2)(B), of the sentencing classifications and sentencing guideline range believed to be applicable to the case.
 
 
 57
 Thus, Rule 32 provides for notice to the defendant of the guideline range proposed by the probation officer as well as the factors that went into the computations that resulted in the given range. Fed.R.Civ.Pro. 32(c)(2)(B). Defendant has not alleged that Rule 32 was violated in any way in this case, and it appears from the record that defendant did receive actual notice, through the presentence report, that the court would be considering a sentence based on the 425 grams of cocaine defendant allegedly distributed to Shipley as well as the 28.5 grams defendant sold in 1989.
 
 
 58
 The notice given defendant by the presentence report is all the notice required by the Constitution. Defendant cites no authority supporting his argument that the Due Process Clause requires the inclusion of sentencing factors in the indictment so as to give adequate notice of the specific charge against the defendant. Defendant confuses the rules applicable to giving notice of the elements[3] of an offense with the rules applicable to giving notice of factors that may be material in sentencing. It is well established that a conviction cannot be upheld upon a charge not made in the indictment, because the indictment is the official notice of the elements of the crime the government undertakes to prove. Dunn v. United States, 442 U.S. 100 (1979). As to factors material to the sentencing process, however, notice is sufficient if given, as it was in this case, by the presentence report in conformity with Rule 32(a)(1) and U.S.S.G. § 6A1.2. United States v. Barrett, 890 F.2d 855, 865 (6th Cir.1989).
 
 III.
 
 59
 For the foregoing reasons, we AFFIRM the sentence imposed by the district court.
 
 
 60
 NATHANIEL R. JONES, Circuit Judge, concurring.
 
 
 61
 I continue to believe, with the dissent in Miller, that the Sentencing Commission has misinterpreted its enabling legislation. Accordingly, I disagree with much of the discussion in part II.C of the majority opinion. Nevertheless, I recognize that the majority opinion in Miller is the law of this circuit, and I am bound by law to support the sentence imposed thereunder. Given that a citation to the dissent in Miller is Hendricks' sole argument against the inclusion of his 1988 drug trafficking conviction, his claim of error must fail.
 
 
 
 1 U.S.S.G. § 1B1.3(a)(2) provides that, with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, base offense levels shall be determined on the basis of "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction."
 
 
 [2]
 In a concurring opinion in Miller, Judge Martin rejected Chief Judge Merritt's concerns that section 1B1.3 ran afoul of the Fifth and Sixth Amendments. Judge Martin stated he was bound by precedent in this court on the question of whether section 1B1.3, as interpreted by the court, comports with the enabling legislation. 910 F.2d at 1329. Although Judge Martin expressed the hope that the full court might reconsider its interpretation of section 1B1.3 in light of Chief Judge Merritt's dissent, this court has declined to do so
 
 
 [3]
 The amount of the drugs involved in a transaction does not constitute an element of the offense. It is for the sentencing court to determine. United States v. Moreno, 899 F.2d 465, 473 (6th Cir.1990); see United States v. Hodges, 935 F.2d 766, 770 (6th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 251 (1991)