NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0727n.06
Filed: October 10, 2007

No. 05-1847

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES |
| | ) | DISTRICT COURT FOR |
| **v.** | ) | THE WESTERN DISTRICT |
| | ) | OF MICHIGAN |
| GERALD WILMER FOUSE, | ) | |
| | ) | **OPINION** |
| *Defendant-Appellee*. | ) | |

BEFORE:    COLE and COOK, Circuit Judges; and FROST, District Judge.[*]

**GREGORY L. FROST, District Judge.**  Appellant, Gerald Wilmer Fouse, appeals from a 92-month sentence imposed after he pleaded guilty to a single count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Fouse argues on appeal that the trial judge erroneously relied on conduct from a dismissed count as relevant conduct in determining his sentence, that the trial judge impermissibly increased his criminal history category, that the government violated his plea agreement, that the lack of a mens rea requirement in U.S.S.G. § 2K2.1(b)(4) is impermissible, and that the Sentencing Commission exceeded its authority in creating the guideline.  For following reasons, this Court **AFFIRMS**.

---

[*] The Honorable Gregory L. Frost, United States District Judge for the Southern District of Ohio, sitting by designation.

1

## I. BACKGROUND

On November 4, 2003, police officers went to Fouse's home in order to investigate a tip that he had a large amount of marijuana in a blue Ford Tempo or a silver Lincoln. Although Fouse consented to a search of both the Lincoln and his home, he insisted that the Ford Tempo was not his. The officers searched the Lincoln without finding marijuana, but before they entered Fouse's home, a police canine alerted to the presence of marajuana in the Ford Tempo.

The officers found keys in Fouse's bedroom, one of which unlocked the Ford Tempo's doors and started the ignition. After none of the keys unlocked the trunk, the officers opened the trunk with a crowbar. Fouse continued to deny that he owned the Ford Tempo and asserted that the keys belonged to a Ford van and fit both the van and the Ford Tempo. In the opened trunk, the officers found a box containing two revolvers, one of which was later determined to be stolen. The officers also found a 227.9-gram bag of marijuana and a scale.

In a subsequent interview with Fouse's housemate and son, officers then learned of two rifles that Fouse kept in his housemate's closet. Officers also retrieved these firearms.

On June 29, 2004, a federal grand jury indicted Fouse on three counts: two counts under 18 U.S.C. § 922(g)(1), felon in possession of as firearm, and one count under 18 U.S.C. § 922(g)(3), unlawful user of a controlled substance in possession of a firearm. Fouse maintained his innocence and argued that neither the Ford Tempo nor the revolvers in the trunk belonged to him. Even when confronted with fingerprint and DNA evidence that he possessed the revolvers, Fouse still maintained his innocence, insisting that he had only moved the box containing the revolvers, that he did not know what was inside the box, and that he did not know a revolver was

2

stolen. He further asserted that he was framed by another individual because of a child-custody dispute. Fouse admitted the two rifles were his, but asserted that he used them only to teach his children how to hunt. He did not admit guilt with respect to the marijuana.

Fouse eventually entered into a plea agreement in which he pleaded to Count Two, felon in possession of a firearm in violation of § 922(g)(1), for possession of the rifles, while the government dismissed Counts One and Three. This plea agreement provided that "[t]he Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed." (JA at 23.) Furthermore, Fouse was informed, and understood through the plea agreement, that he would be unable to change his plea if the trial judge were to ignore the sentencing guidelines. Fouse also understood pursuant to the plea agreement that no one was capable of making a "binding prediction or promise" about what the sentence would be and that as long as the sentence was within the statutory maximum, Fouse must serve the prescribed sentence. (JA at 23-24.)

Because Fouse is illiterate, the district judge at the change of plea hearing read each paragraph of the plea agreement aloud to ensure that Fouse understood its terms. The district judge also inquired as to whether Fouse understood what he was signing when Fouse signed the plea agreement. The district judge read aloud the count to which Fouse pled guilty. Additionally, the district judge stated the potential maximum sentence for Fouse's crime: "ten years in prison, a period of three years supervised release, . . . a fine of $250,000, and a mandatory special assessment of $100." (JA at 31.) Of import is that during this review, the district judge stated that "[t]he U.S. Attorney makes the following agreements: First of all, it

3

agrees that it will move to dismiss the Counts One and Three at the time of sentencing. And I can make another promise to you, if I'm going to sentence you on Count Two, I will grant that motion and have Counts One and Three put aside." (JA at 39.)

A presentence report was prepared and made available to Fouse and the government in sufficient time to object. That report placed Fouse's Total Offense Level at 21 with a Criminal History Category ("CHC") of III, resulting in a guideline range of 46-57 months. (JA at 52.) Although the government initially indicated that it did not object to any portion of the report, the government later objected via letter to any enhancement based on the two revolvers. Apparently, the presentence report writer failed to forward this letter to the trial judge, who did not become aware of that objection until sentencing.

At sentencing–despite the government's arguments to the contrary, which the government acknowledged that the trial judge was free to ignore–the trial judge found that Fouse possessed the two revolvers identified in the dismissed Count One. In making this finding, the district judge rejected Fouse's explanation of a frame-up and relied on Fouse's fingerprints being on the case containing the revolvers, as well as his DNA being on a revolver and his possession of the keys to the Ford Tempo. The judge also noted that Fouse had a long history of acquiring firearms that the police routinely confiscated and a long history of lying to officers. Additionally, targeting the under-representation of the seriousness of Fouse's criminal history and of his likely recidivism, the trial judge disagreed with the report's analysis of Fouse's criminal history and found that it failed to take into account sufficiently Fouse's thirty-one criminal convictions and the context in which they occurred. The trial judge therefore detailed Fouse's extensive criminal history and stated that Fouse "is an incorrigible person who continues to engage in criminal

4

behavior, including assaultive behaviors, gun crimes and drug crimes" (JA at 87), that Fouse had continually "received exceptionally lenient treatment from the criminal justice system" (JA at 78), and that Fouse "is a person whose psychological overlay makes it very likely that he will continue to offend, particularly through assaultive behaviors" (JA at 79).

The trial judge ultimately enhanced for relevant conduct (for possessing 3-7 firearms, one of which was stolen), deducted a level for substantial assistance (for Fouse's work as a police informant), and awarded no points for acceptance of responsibility (as a result of Fouse denying possession of the revolvers and portraying himself as a father only teaching his sons to hunt instead of as a felon in possession of firearms). The district judge also departed from Criminal History Category III to VI and arrived at a recalculated guideline range of 92-115 months, rather than the lesser range suggested by the presentence report.

The district judge sentenced Fouse to 92 months incarceration and three years of supervised release. Fouse timely appealed.

## II.  ANALYSIS

In his first argument on appeal, Fouse asserts that the district court erred in enhancing his sentence because there was no evidence in the record to support the finding that he was guilty of possessing a stolen gun. Fouse also contends that the district court erred in concluding that his criminal history category was understated, and that all of the foregoing findings rendered his guilty plea to be not knowingly and involuntary in violation of his due process rights. These contentions are without merit.

Count One, which was dismissed, targeted the possession of two revolvers recovered from Fouse's vehicle. As noted, the trial judge indicated during the plea hearing that he would

5

put Counts One and Three "aside" and sentence Fouse on Count Two. (JA at 39.) Fouse argues that the trial judge's consideration of the conduct involved in Count One as relevant conduct did not place that count "aside" and in fact deceived him into pleading guilty to Count Two in connection with the plea agreement.

Fouse's argument fails to credit sufficiently that the district court did not sentence him on Count One; rather, the trial judge ultimately considered the conduct involved in Count One as relevant to sentencing on Count Two. The distinction is more than semantic. The trial judge did not punish Fouse for being guilty of Count One, but for being guilty of Count Two with related conduct of which the Sentencing Guidelines permit consideration. *See United States v. Partington*, 21 F.3d 714, 717 (6th Cir. 1994) ("Conduct which forms the basis for counts dismissed pursuant to a plea bargain may be considered in determining the base offense level under the guidelines."). The conduct involved in Count One falls within the commentary to USSG § 1B1.4. As the government correctly notes in its briefing, the district judge's actions afforded Fouse a potential benefit in that the trial court did not inquire into the facts surrounding Counts One and Three when taking the plea, which left the facts underlying the conduct involved in these counts open to dispute by Fouse at sentencing. Fouse took partial advantage of the opportunity, contesting at sentencing his possession of the revolvers.

There was ample evidence to support the trial judge's factual findings. This Court reviews a district court's factual findings at a sentencing proceeding for clear error and its application of the Sentencing Guidelines to those facts *de novo. United States v. Butler*, 297 F.3d 505, 516 (6th Cir. 2002), *cert. denied* 538 U.S. 1032 (2003); *see also United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007). Here, the record indicates that the district judge did not believe

Fouse's story that he had been framed and credited the presence of Fouse's fingerprints on the gun case, his DNA on one of the revolvers, and the presence of the two firearms in a vehicle to which Fouse held the keys in his bedroom as circumstantial evidence of possession. This supports the finding that two firearms were involved, and the stolen firearm enhancement does not require knowledge that the Anaconda revolver was stolen. Fouse objected to the sufficiency of these facts, not to their existence. Moreover, as discussed below, Circuit precedent teaches that by not specifically objecting to these factual contentions, Fouse admitted the foregoing facts, including the fact that the weapon was stolen, which moots his argument that there was insufficient evidence from which the trial judge could conclude that the revolver was stolen.

Fouse's possession of four firearms (two revolvers and two rifles) thus properly invoked the applicable three-to-seven firearm enhancement under U.S.S.G. § 2K2.1(b)(1)(A). The fact that one of the revolvers was stolen rendered the enhancement under U.S.S.G. § 2K2.1(b)(4) similarly applicable. That Fouse denies the sufficiency of the factfinding below provides support for the district court denying him an acceptance of responsibility adjustment based on those facts. *See United States v. Webb*, 335 F.3d 534, 538 (6th Cir. 2003) (" '[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.' " (quoting U.S.S.G. § 3E1.1 cmt. N.1(a))).

Additionally, the district court pointed to Fouse's long history of possessing guns and his thirty-one prior convictions, as well as other unprosecuted charges and a history of what the trial judge described as lenient treatment, before concluding that the lesser criminal history categories the trial court considered did not sufficiently appreciate the noted danger to the public that the

trial judge specifically found Fouse posed.  Although the trial judge could have conceivably explained his analysis with more step-by-step detail, no magic words are required in such an explanation, but at most only a reasoned statement from the bench.  *See United States v. Kennedy*, 893 F.2d 825, 828 (6th Cir. 1990).  The record here supports that the trial judge adequately considered and rejected intervening criminal history categories in arriving at the criminal history departure.  Unlike in *Kennedy*, 893 F.3d at 828, or in *Wells*, 878 F.2d 1232, 1233 (9th Cir. 1989), the district judge here identified specific criminal activity that justified a finding that the guidelines under-represented Fouse's criminal history and explicitly stated that the guidelines indeed under-represented his criminal history.[1]  The trial judge *did* demonstrate that he looked to the next higher criminal history category and *did* demonstrate that he found the sentence imposed by the next higher criminal history category too lenient.  *See Kennedy*, 893 F.3d at 829.

By sufficiently identifying and explaining the 18 U.S.C. § 3553(a) factors involved, the district court satisfied the requirement that the departure be procedurally reasonable.  See *United States v. Smith*, 474 F.3d 888, 894 (6th Cir. 2007).  The district court's explanation also satisfied the requirement that the departure be substantively reasonable because there is no indication that the district court selected the sentence arbitrarily, based the sentence on impermissible factors,

---

[1] The government argues that *Kennedy*'s "stepwise" approach no longer applies because that portion of U.S.S.G. § 4A1.3 cited in *Kennedy* as mandating such analysis is no longer a part of the guidelines.  *See Kennedy*, 893 F.2d at 829 n.6.  The Court has, however, referred to *Kennedy* in the departure context as recently as 2005 in *United States v. Loggins*, 136 F. App'x 789, 794 (6th Cir. 2005).  This panel need not and ultimately does not opine on the government's contention because the trial judge's explanation indicates that he engaged in a somewhat condensed but sufficient analysis satisfying both the category-step *Kennedy* approach and the less-mechanistic reasonableness approach of *United States v. Smith*, 474 F.3d 888, 894 (6th Cir. 2007).

failed to consider pertinent factors, or gave any pertinent factor an unreasonable amount of weight. *Id.* The district court was therefore within its discretion to adjust Fouse's criminal history category as it did.

Given that the trial court's factual findings and sentencing conclusions were permissible, as well as the exculpatory language of the plea agreement emphasizing the district court's role as the sole sentencing entity and that withdrawal of the plea for an undesirable sentence was not an option, there is no basis for concluding that invalidation of Fouse's plea is warranted. *See United States v. Benjamin*, 188 F.3d 509, 1999 WL 685924, at *3 (6th Cir. 1999) (table decision) (holding that warnings in plea agreement rendered failure to give Rule 11 warning harmless).

In his second argument on appeal, Fouse asserts that the district court violated the plea agreement either explicitly or in spirit by enhancing Fouse's sentence based on the revolvers without advising Fouse that he could not withdraw his guilty plea. Fouse further asserts that the district court promised not to sentence Fouse on the behavior underlying Count One. This argument ignores the fact that the plea agreement explicitly stated that the court was not bound by the parties' recommendations and that Fouse is bound even if the court ignored the recommendations. (JA at 23.)

The plea agreement restricted the court only to the statutory maximum sentence. Paragraph 10 of the Plea Agreement states that the court is under "no obligation to accept any recommendation by . . . the parties regarding the sentence to be imposed. The defendant further understands that, even if the Court ignores such recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty

9

plea." (JA at 23.) Because Fouse was illiterate, the district court meticulously summarized the plea agreement to ensure Fouse understood the agreement.

Fouse argues that the government breached the plea agreement because of the facts described in the presentence report by the United States Probation Department and because the prosecuting attorney recounted various facts on the record. Describing the United States Attorney's Office and the United States Probation Department as "all the same prosecutorial agency" (Aplt. Br. at 33), Fouse reasons that a promise by the prosecuting attorney in the plea agreement must bind the probation department. Because the probation department departed from the plea agreement in its guideline calculations by citing the two revolvers, Fouse concludes, the government failed to honor the contract into which it entered.

This Court has previously distinguished between the United States Attorney's Office and the probation department in *United States v. Garavaglia*, 178 F.3d 1297, 1999 WL 220125 (6th Cir. 1999) (table decision). *See also United States v. Espalin*, 350 F.3d 488, 490 (6th Cir. 2003) (referencing with approval characterization of probation department set forth by concurrence). The defendant in *Garavaglia* had appealed, arguing that the prosecuting attorney had breached that defendant's plea agreement because the presentence report and trial judge both calculated his sentence by using a guideline not included in the plea agreement, which purported to set forth all the applicable guidelines "that the parties will raise." *Id.* at *3. The Court affirmed, reasoning in part that the plea agreement stated that "this agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the Eastern District of Michigan" and that "[i]t was the probation department that first raised [the disputed] guideline." *Id.* Similarly, Fouse's plea agreement states that "[t]his agreement is limited to the U.S. Attorney's Office for

10

the Western District of Michigan and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities." (JA at 24.) As in *Garavaglia*, then, the fact that the probation department raised the disputed conduct and enhancement involved here does not equal a breach of the plea agreement.

Even assuming arguendo that Fouse's characterization of the various government actors as fungible is somehow correct, his argument nevertheless overlooks the import of the fact that the prosecuting attorney did in fact object to the presentence report, that he explained the plea agreement to the district court, and that he explicitly argued against the gun enhancement for the two revolvers. Fouse appears to reject any notion that the presentence report could be "cured" by arguing that prejudice was irreversible because the trial judge was determined to enhance his sentence regardless of the plea agreement and the government's attempted cure.

This argument gives the trial judge too little credit and ignores the lengthy discussion that took place at the sentencing hearing. After discussing the government's objections and the specifics of the plea agreement, the trial judge recessed and, upon resuming the hearing, cited comments to sections 1B1.3 and 1B1.4 of the guidelines in specifically overruling the government's objection, which focused on paragraph 34 of the presentence report. The trial judge also cited on the record *United States v. Partington*, 21 F.3d 714, 717 (6th Cir. 1994), which, as noted above, permits consideration of conduct forming the basis for dismissed counts in determining a defendant's base offense level under the guidelines. Thus, the government worked to meet its obligations, but was unsuccessful at persuading the trial judge to follow a plea agreement that the law does not require him to follow. The trial judge was not bound by that agreement and properly considered the information regarding Count One that the government

11

sought to exclude. Although judicial consideration of this information may have effectively nullified the effect of the plea agreement, this is a permissible course of conduct that resulted in a permissible sentence. *See United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996). The trial court thus did not err in concluding that the nature and character of the revolvers Fouse contemporaneously possessed with his rifles constituted relevant conduct under § 1B1.3(a)(4) and *Partington* and informed the Count Two conviction for possession of two rifles. Additionally, possession of the revolvers constituted a common scheme and were part of Fouse's course of conduct under §1B1.3(a)(2).

The fact that the prosecuting attorney recited many of the damning facts does not, taken in context, mean that the government breached the plea agreement because that attorney continually urged the trial judge not to apply the facts. A neutral recitation of facts does not breach a plea agreement. *United States v. Allen*, 434 F.3d 1166, 1175-76 (9th Cir. 2006). This was not an attempt by the government to influence the district court to impose a harsher sentence than the one to which the government agreed in the plea agreement. The government had already lost that argument, and the prosecuting attorney expressed a desire simply to "support [the trial judge's] decision by evidence that the United States has in its possession" without "going over [his] objection." (JA at 80.) The account of the facts arguably supplied a neutral record permitting adequate understanding of context. *See id.* at 1175.

To the extent that protecting the record on appeal could be regarded as advocating a sentence in the district court, such action must be viewed in light of the plea agreement. Here, "the plea agreement makes clear that the trial judge is the one who determines and resolves all sentencing issues and, consistent with this proposition, the government reserved the right to

defend any and all sentencing determinations made by the judge." *United States v. Martinez*, 16 F. App'x 410, 414 (6th Cir. 2001). The former proposition is explicit in the plea agreement, while the latter proposition is a logical implication thereof. There was thus no breach of the plea agreement resulting in an erroneous sentence.

In his last two remaining arguments on appeal, Fouse attacks the role that his possession of firearms played in his sentencing. He argues that there are insufficient public policy grounds to support the Sentencing Commission's decision to omit a mens rea requirement from § 2K2.1(b)(4) because 18 U.S.C. § 922(i) and (j), which include a mens rea component, already reinforce the public's interest in regulating firearms. The lack of a mens rea requirement, Fouse reasons, constitutes a due process violation because the government obtained via sentencing a penalty that it could have otherwise obtained only through a conviction under 18 U.S.C. § 922(i) and (j). Fouse contends that § 2K2.1(b)(4) therefore provides the government with a "back door" or way around the heightened burden of proof that a conviction would require. Additionally, Fouse asserts that the Sentencing Commission exceeded its authority by enacting § 2K2.1(b)(4) because the Commission is only authorized to impose incremental penalties for crimes of which a defendant has been convicted.

Fouse's arguments fail to distinguish this Court's prior decisions upholding the constitutionality of § 2K2.1(b)(4), its lack of scienter, and the Sentencing Commission's interpretation of its enabling legislation. This Court has in fact specifically addressed and rejected the exact same arguments Fouse presents on appeal. *See United States v. Burns*, 109 F. App'x 52, 54-56 (6th Cir. 2004) (collecting cases supporting the proposition that "[t]his circuit and every other circuit to have considered the issue have also concluded that the lack of a *mens*

13

*rea* requirement in § 2K2.1(b)(4) comports with constitutional requirements"); *United States v. Woods*, 61 F.3d 904, 1995 WL 428334, at *3 (6th Cir. 1995) (table decision) ("Neither the absence of a scienter requirement in the guidelines nor the presence of a scienter requirement in 18 U.S.C. § 922(i)–a statute under which the defendant was not charged–makes the sentencing enhancement unconstitutional."); *United States v. Hendricks*, 956 F.2d 1164, 1992 WL 44737, at *6 (6th Cir. 1992) (table decision) ("The language of section 994[I](1) does not seem to restrict the Commission's power to impose increased penalties for uncharged conduct").

Fouse offers no compelling reason to distinguish this precedent. Acknowledging *Burns* in his brief, Fouse offers that, in contrast to his situation, the defendant in that case had admitted that the firearm at issue was stolen. But this provides little contrast to the case *sub judice*, where Fouse never contested below that one of the revolvers recovered from his car was stolen. Rather, Fouse argued in the district court *only* that he did not possess the two firearms and that he did not know that the Anaconda revolver was stolen. (JA at 58.) A failure to object to a factual contention contained in a presentence report amounts to an admission of that fact. *See United States v. DeCarlo*, 434 F.3d 447, 460 (6th Cir. 2006) ("The two-level enhancement for computer use was admitted by DeCarlo because he did not object to that fact as reported in his presentence report."). Fouse therefore admitted the stolen nature of the Anaconda revolver.

This admission negates the need for opining on plain error review here. The Court recognizes that the government suggests that Fouse has waived all but plain error as to the trial court's determination that the Anaconda revolver was in fact stolen. *See* Fed. R. Crim. P. 52(b). Under this argument, the government suggest that the Court need not engage in extended discussion of plain error inquiry because any error below could not be said to have affected

14

Fouse's substantial rights so as to warrant potential relief. This is because the 92-month sentence he received with the disputed enhancement is within the guideline range in which Fouse would have fallen without application of the enhancement (but still with the increased criminal history category), which the government posits precludes finding plain error here. *See United States v. Mazyck*, 178 F. App'x 321, 322 (4th Cir. 2006). There is potentially some qualified support within this Circuit for following the *Mazyck* rationale. *See United States v. Parks*, 149 F.3d 1185, 1998 WL 384562, at *2 (6th Cir. 1998) (table decision) (holding that where the sentencing judge indicated that a defendant would receive the same sentence under overlapping guideline ranges regardless of whether an enhancement applied, the sentence imposed using the enhancement did not affect a defendant's substantial rights and therefore did not constitute plain error). But given that *Mazyck* is a Fourth Circuit decision and that this Court's own *DeCarlo* characterizes the failure to object as an *admission* as opposed to a *waiver*, the Court declines the government's unnecessary invitation to engage in a plain-error analysis here. Fouse's arguments as to § 2K2.1(b)(4) are of no merit.

## III. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS**.