NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0217n.06

No. 08-6422

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Apr 07, 2010**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
) ON APPEAL FROM THE
    v. ) UNITED STATES DISTRICT
) COURT FOR THE WESTERN
) DISTRICT OF TENNESSEE
JESSIE MOORE, )
)
    Defendant-Appellant. )
)

BEFORE:   KEITH, BOGGS, and GRIFFIN, Circuit Judges.

    GRIFFIN, Circuit Judge.

    Defendant Jessie Moore appeals his within-Guidelines sentence of 37 months of imprisonment, imposed after he pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). We affirm.

I.

    The operative facts are not in dispute. Shortly after midnight on November 2, 2004, officers with the Memphis Police Department responded to a "shots fired" call at an address on West Brooks Road. Upon arrival, the officers discovered a victim, who had been shot in the hip by an unknown assailant. The shooter was purportedly accompanied by two additional male suspects, who did not enter the residence with him. The officers received information that the three suspects left the scene in a burgundy Toyota truck.

While checking the area, the officers observed a parked vehicle matching this description. Moore was walking away from the truck, through a yard. The officers detained him and asked if he had any weapons in his possession. Moore responded affirmatively, and the officers conducted a pat-down search, which yielded a .44-caliber revolver in Moore's right coat pocket and four live rounds of .44-caliber ammunition in his left pocket. A subsequent computer check showed that the firearm was reported stolen in September 2001 and that Moore was a felon on parole following a second-degree murder conviction in the Shelby County, Tennessee, Criminal Court. Moore denied ownership of the revolver and professed to have no knowledge that it was stolen. Further investigation disclosed that Moore was not involved in the November 2, 2004, shooting incident.

In April 2007, a federal grand jury indicted Moore on one count of being a felon in possession of a firearm, contrary to 18 U.S.C. § 922(g). He pleaded guilty to this charge on July 2, 2008. Although Moore did not contest the PSR's factual finding that the firearm was stolen in 2001, he did object to the report's recommendation to apply a two-level enhancement to his base offense level pursuant to U.S.S.G. § 2K2.1(b)(4)(A), for possession of a stolen firearm by a convicted felon.[1] Moore challenged the enhancement on policy grounds and argued that its application in his case would be arbitrary and excessive in light of his claim that he was unaware that the firearm was stolen. At sentencing, he requested a variance and a sentence of 30 months of imprisonment, below the recommended Guidelines range of 37 to 46 months, based on his contention that the enhancement should not apply.

---

[1]The 2007 edition of the Guidelines Manual applied.

Over Moore's objection, the district court applied a two-level enhancement under §

2K2.1(b)(4)(A) and, with an adjustment for acceptance of responsibility, sentenced Moore at the

bottom of the resultant Guidelines range to 37 months of imprisonment, to be served consecutively

to Moore's undischarged state sentence, followed by two years of supervised release. Moore now

appeals.

II.

U.S.S.G. § 2K2.1(b)(4)(A) requires a two-level increase to the base offense level when a

defendant with at least one prior felony conviction possesses a stolen firearm. "Subsection (b)(4)

applies regardless of whether the defendant knew or had reason to believe that the firearm was

stolen." U.S.S.G. § 2K2.1 cmt. n.8(B).

Moore acknowledges that in *United States v. Murphy*, 96 F.3d 846, 848-49 (6th Cir. 1996),

we held that § 2K2.1(b)(4)(A) does not violate due process, despite the absence of a scienter

requirement.[2] *See also United States v. Fouse*, 250 F. App'x 704, 709 (6th Cir. 2007) (unpublished);

*United States v. Earl Booker*, No. 05-1929, 2007 WL 2492427, at *5 (6th Cir. Sept. 5, 2007)

(unpublished); *United States v. Webb*, 403 F.3d 373, 384 n.7 (6th Cir. 2005); *United States v. Burns*,

109 F. App'x 52, 54-56 (6th Cir. 2004) (unpublished).

---

[2]In *Murphy*, we took note of the "well-settled principle that a statute may provide criminal liability without *mens rea* consistent with due process if it is a regulatory measure in the interest of public safety[,]" and joined other sister circuits in concluding that "the strict liability enhancement for possession of a stolen firearm is rationally related to the legitimate governmental goal of crime prevention: § 2K2.1(b)[(4)] was promulgated on the premise that stolen firearms are used disproportionately in the commission of crimes." *Murphy*, 96 F.3d at 849 (citations, internal quotation marks, and brackets omitted).

He contends, nonetheless, that *Murphy* is no longer viable in the wake of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which rendered the Sentencing Guidelines advisory, established a "reasonableness" standard of review, and spawned a host of cases that returned judicial discretion to sentencing. According to Moore, § 2K2.1(b)(4)(A) is now entitled to little deference because sentencing courts are free to disregard the Sentencing Commission's policy choices in a specific Guidelines provision, such as the lack of a *mens rea* requirement in § 2K2.1(b)(4)(A). Moore submits, as he did in the district court, that application of the enhancement is arbitrary and contrary to the sentencing goals of 18 U.S.C. § 3553(a), particularly where, as here, a defendant is unaware that the firearm was stolen.

Recently, in *United States v. Rolack*, No. 08-6255, 2010 WL 272421 (6th Cir. Jan. 22, 2010) (unpublished), we considered an identical challenge to § 2K2.1(b)(4) and concluded that our decision in *Murphy* remains sound:

> On appeal, Rolack argues that the district court failed to recognize that, despite *Murphy*, it had discretion to reject and vary from the Guidelines under post-*Booker* cases, including *United States v. Kimbrough*, 552 U.S. 85, 110 (2007) (holding that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case"), and *Spears v. United States*, 129 S. Ct. 840, 842-44 (2009) (clarifying *Kimbrough*, noting that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines" and not simply based on an individualized determination that they yield an excessive sentence in a particular case).
>
> At the district court level, the argument that the district court should vary from the Guidelines range based on a policy disagreement with the enhancement was intertwined with the argument that, in light of subsequent case law, *Murphy* no longer controls regarding Rolack's objections to the application of U.S.S.G. §

2K2.1(b)(4). The latter argument contends that the district court should revisit the issues raised in *Murphy* – the constitutionality and propriety of applying the enhancement in the absence of a finding of scienter; the former argument contends that although *Murphy* is controlling on the constitutionality of the Guideline commentary, the district court may nevertheless on its own decline to apply the enhancement when it yields a sentencing range in excess of a sentence that is "'sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in § 3553(a)(2)." *See Kimbrough*, 552 U.S. at 111.

Rolack relies on *United States v. Handy*, 570 F. Supp. 2d 437, 439 (E.D.N.Y. 2008), a 43-page opinion in which Senior United States District Judge Jack Weinstein held invalid the Guidelines Commentary's elimination of the scienter requirement. In the instant case, the district court concluded it was bound by *Murphy*, and that the enhancement is applicable; the court did not directly address whether it had discretion to reject or vary from the 2-level enhancement based on a disagreement with the Guideline.

* * *

*To the extent Rolack's sentencing memorandum and argument at sentencing presented a direct challenge to U.S.S.G. § 2K2.1(b)(4)'s constitutionality and applicability, the district court addressed that argument, correctly, and concluded that Murphy continues to stand for the proposition that application of the enhancement is constitutional and proper, even where knowledge of the firearm's stolen character is not shown.*

2010 WL 272421, at *2-3 (footnotes omitted, emphasis added).[3]

---

[3]In so holding, we noted that the scope of the *Spears* decision was recently expanded by this court in *United States v. Herrera-Zuniga*, 571 F.3d 568, 584 (6th Cir. 2009), in which we held that "the authority recognized in *Spears* to reject on policy grounds an otherwise-applicable aspect of the Sentencing Guidelines" is not limited to cases involving crack cocaine. *Rolack*, 2010 WL 272421, at *2 n.5.

For the reasons set forth in *Rolack*, Moore's identical argument in the present case – that *Booker*, *Kimbrough*, and *Spears* have undermined *Murphy* – likewise fails.[4]

### III.

"It is a separate question, however, whether the district court adequately explained its chosen sentence in light of [the defendant's] argument that, despite *Murphy*, the court had discretion to reject the 2-level enhancement for possessing a stolen firearm." *Rolack*, 2010 WL 272421, at *3.

Moore complains that the district court provided only a cursory response to his arguments regarding *Murphy's* continued legitimacy and the alleged arbitrariness of § 2K2.1(b)(4) in circumstances where a defendant is unaware that the firearm is stolen. He further contends that the district court failed to conduct a proper analysis in denying his request for a downward variance because the court purportedly mischaracterized the underlying policy of § 2K2.1(b)(4), causing it to rely on inaccurate information when it applied the enhancement. Our review of the sentencing record indicates otherwise.

We review the district court's sentencing determinations for reasonableness, using a deferential "abuse-of-discretion standard." *United States v. Martinez*, 588 F.3d 301, 324 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 56 (2007); *Rita v. United States*, 551 U.S. 338, 361 (2007); and *Booker*, 543 U.S. at 261). The procedural component of the reasonableness equation

---

[4]Unpublished opinions of this court are not precedentially binding under the doctrine of stare decisis, but may be considered for their persuasive value. *Thompson v. N. Am. Stainless, LP*, 567 F.3d 804, 809 n.2 (6th Cir. 2009) (en banc); *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007). We find *Rolack* to be persuasive regarding this issue.

requires that we "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *Martinez*, 588 F.3d at 324 (quoting *Gall*, 552 U.S. at 51). The district court's decision "should be sufficiently detailed to reflect the considerations listed in § 3553(a) to permit meaningful appellate review" and "must also provide some indication that the court considered the defendant's arguments in favor of a lower sentence and the basis for rejecting such arguments." *Martinez*, 588 F.3d at 325 (citations and internal quotation marks omitted).

"In order for a defendant's sentence to be procedurally reasonable, the district court cannot presume that the sentencing range recommended under the Guidelines is mandatory or even reasonable. Instead, the sentencing court must 'make an individualized assessment [of the appropriate sentence] based on the facts presented.'" *Herrera-Zuniga*, 571 F.3d at 582 (quoting *Gall*, 552 U.S. at 49). Consequently, under the advisory Guidelines scheme, a district court may reject on policy grounds an otherwise-applicable aspect of the Sentencing Guidelines. *See supra* n.3; *Herrera-Zuniga*, 571 F.3d at 584. A defendant's policy-based challenge to the Guidelines is properly construed as a procedural, rather than a substantive, challenge. *Herrera-Zuniga*, 571 F.3d at 579-80.

Assuming a sentence is procedurally sound, we must then consider its substantive reasonableness, i.e., whether the district court "select[ed] a sentence arbitrarily, base[d] the sentence

on impermissible factors, fail[ed] to consider relevant sentencing factors, or [gave] an unreasonable

amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir.),

*cert. denied*, ___ U.S. ___, 129 S. Ct. 450 (2008) (citing *United States v. Webb*, 403 F.3d 373, 389

(6th Cir. 2007)). A sentence within the prescribed Guidelines range is presumptively reasonable.

*United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

Our review of the record leads us to conclude that Moore's sentence is procedurally and

substantively reasonable. At the sentencing hearing, defense counsel conceded that his policy

challenge to § 2K2.1(b)(4) was inconsistent with our decision in *Murphy*. The district court

overruled the objection and "adopted the position as adhered to by the Sixth Circuit[,]" stating that

"[t]his was a stolen firearm, and it's not required that you even know it was stolen, it's just a stolen

firearm." Moore requested a downward variance, arguing that § 2K2.1(b)(4) was inapplicable and

that the § 3553(a) sentencing factors justified such a variance. The district court disagreed and

explained its reasons for denying the request:

> There are certainly policy considerations in terms of a two-level enhancement, and
> we certainly want to discourage the recycling of firearms to the degree that we can.
> In dealing with the issue of gun violence and the role of guns in society, one of the
> things that Congress has attempted to do is to first restrict their access or access to
> them by certain categories of individuals to make it well-known in society that if you
> have got a prior conviction you cannot have a firearm. And it is clear from the
> guidelines that they, in formulating the guidelines, wanted a bright line test on stolen
> firearms. The theory being, I think, that individuals who may be difficult, often
> impossible, prove that somebody knew that the firearm was stolen unless, of course,
> they stole it, and they're apprehended in certain circumstances, it is pretty hard to
> show that. But we want to discourage the trafficking and low cost firearms which are
> often perceived to be ones that are stolen. . . . Certainly, it's appropriate to have this
> enhancement. It has a reasonable basis in logic, and it suffers from all the other
> problems with our – both our guidelines and the laws in that most people don't know

what they are, but those who do at least benefit from the deterrent effect created. So I think it's – I hear what you're saying in that regard, but I think we should regard the guidelines as appropriately calculated.

The district court proceeded to consider the relevant § 3553(a) sentencing factors and first discussed Moore's offense conduct, which included a less-than-candid statement to police about where he obtained the gun and why he was carrying it.[5] The court then reviewed Moore's criminal history: (1) a 1992 conviction for second-degree murder, stemming from an incident in which he lured a drug dealer into an apartment and shot him in the back; (2) a 1989 drug conviction; (3) a 1989 prowling conviction; and (4) a parole violation. The court concluded, justifiably, that Moore had "a history that has violence and gun play involved and a history with some drug activity involved, and those are the two things that Congress over now many years has placed great emphasis on." After balancing the need to achieve "just punishment" with an obligation to "protect the public," the court assigned Moore a base offense level of 20, added the two-level stolen-firearm enhancement, and reduced the total by three levels for acceptance of responsibility, resulting in an offense level of 19. This total offense level, combined with Moore's criminal history category of III, yielded a Guidelines range of 37 to 46 months. The court sentenced Moore to 37 months of imprisonment, consistent with the government's recommendation for a low-end sentence.

Moore takes exception to the district court's statement regarding the policy underpinnings of § 2K2.1(b)(4) and argues that the district court "provided a post hoc policy rationale for the

---

[5]Moore denied owning the gun, said he did not know who owned it or why he was carrying it, and when asked where he obtained the gun, he responded evasively that "[i]t was in my coat[.]"

absence of a mens rea requirement in the enhancement." His argument is without merit. The district court's explanation is entirely consistent with our holding in *Murphy* that "strict liability enhancement for possession of a stolen firearm is rationally related to the legitimate governmental goal of crime prevention" and "[f]urther, [that] an ex-felon who obtains a stolen firearm is more culpable than one who legally obtains a firearm." *Murphy*, 96 F.3d at 849 (citation omitted); *see also Burns*, 109 F. App'x at 55 (same).

Moreover, the court clearly recognized that it had discretion to accept or reject the stolen-firearm enhancement for policy reasons. As the record indicates, the court explained its reasons for accepting the commission's policy, in a way that made it quite clear that had it reasoned differently, it would have rejected that policy. *See Rolack*, 2010 WL 272421, at *3 (affirming imposition of the two-level enhancement under § 2K2.1(b)(4) where "although the district court did not expressly address whether it recognized that it had discretion to reject or vary from the stolen firearm enhancement on policy grounds, its remarks at sentencing indicate that it concluded that [the defendant] had enough reason to believe the firearm was stolen to make application of the enhancement appropriate, and that it found a 57-month sentence adequate, but not excessive.") (footnote omitted).

Moore's sentence is procedurally sound in all other respects. Under these circumstances, we conclude that the district court did not abuse its discretion in applying § 2K2.1(b)(4)(A). Regarding the substantive reasonableness of Moore's sentence, we hold that Moore has not overcome the presumption of reasonableness that applies to his within-Guidelines sentence.

IV.

For these reasons, we affirm the judgment of the district court.