**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0098n.06

**No. 10-4267**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Jan 26, 2012***

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    **Plaintiff-Appellee,**

v.

RAYMOND D. JOHNSON,

    **Defendant-Appellant.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

_____/

**BEFORE:**   **MOORE, CLAY, and McKEAGUE, Circuit Judges.**

    **CLAY, Circuit Judge.** Defendant Raymond D. Johnson pleaded guilty to possession with the intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Defendant appeals the district court's order denying his motion to suppress and appeals his sentence for procedural and substantive reasonableness. For the reasons that follow, we **AFFIRM**.

**BACKGROUND**

    Defendant's convictions arise from a task force investigation of a suspected large-scale drug transaction on March 17, 2010 in Cleveland, Ohio. A confidential informant told the police of the date of the transaction, the location, and the individuals and vehicles that would be involved. Police conducted surveillance of the Radisson Hotel in North Olmsted, Ohio. They observed Abdul Hakim

("Hakim") enter the hotel and meet with an individual who was one of the targets of the surveillance. The two met in the target individual's hotel room. Hakim and the individual later left the Radisson and traveled separately to the Marriott Hotel in Cleveland. Hakim left his vehicle and walked to the back side of the Marriott, pulling a large roll-away suitcase. Another individual, who was also a target of the surveillance, met Hakim at the back door of the Marriott.

Hakim then left the Marriott and drove to a residence at 32762 Glen Drive, North Ridgeville, Ohio ("Glen Drive residence"). After remaining inside the house for fifteen to twenty minutes, Hakim left the Glen Drive residence. While driving away from the house, he was stopped for a traffic violation. The officers who stopped Hakim detected a "very strong odor of raw marijuana" emanating from Hakim's car and conducted a search. They found $66,000 in cash but no marijuana. The officers testified that, in their experience, the smell of raw marijuana can remain even after the drugs have been removed. During questioning, Hakim lied to the officers about his prior whereabouts. Hakim was taken to a police station for further questioning, but he requested an attorney and the questioning stopped.

As the officers continued to observe the Glen Drive residence, they noticed Defendant leave the residence. His vehicle was subsequently stopped for a traffic violation at a gas station. A police dog walked the perimeter of the vehicle and alerted officers to the presence of narcotics. Police officers searched Defendant's vehicle and recovered several marijuana blunts. Defendant was then taken into custody. Defendant alleged that he was visiting a friend at the Glen Drive residence, but police discovered that he actually resided there. Defendant refused to answer further questions.

Thirty to forty-five minutes after Defendant departed from the Glen Drive residence, officers observed a third vehicle arrive there. At least one individual entered the home, remained there for ten to fifteen minutes, and drove away. That vehicle was also stopped for a traffic violation. Two individuals were in the car, and the officers learned that one had a lengthy criminal history of drug trafficking.

The officers noticed that there were still lights on in the house and a television was on. The officers believed that at least one individual remained inside the house, though they did not see anyone. They attempted to discover who lived at the residence, but they could not.

One of the officers contacted an Assistant United States Attorney to ask about the propriety of conducting a warrantless protective sweep of the Glen Drive residence. The officers feared that, when Hakim and the other individuals were released from custody and the traffic stop, respectively, they might contact individuals who may be in the home and instruct them to destroy evidence. The attorney advised the officers that they could secure the house.

The officers knocked on the door and no one answered. They could not open the front door because a steel pole was wedged between the door knob and the floor. They eventually broke down the door and checked the home for individuals. They did not find anyone but did see large bags of marijuana in multiple locations. There was also an overwhelming smell of raw marijuana emanating from the house. The protective sweep only lasted a few minutes. The police did not seize any evidence, but left the residence and placed an officer in the driveway.

The officers then questioned a resident of the duplex attached to the Glen Drive residence, who stated that the Glen Drive residence always smelled of raw marijuana.

Officer Scott Payne submitted a search warrant affidavit and received a search warrant for the Glen Drive residence. After obtaining the search warrant, the officers conducted a search of the Glen Drive residence and seized dozens of bags of marijuana, heroin, a heroin press, cash, duffle bags, plastic baggies, a handgun, ammunition, scales, rubber bands, cellophane, two digital scales and another scale, an electric grinder, an empty magazine, twenty-seven cell phones, and other items.

On April 13, 2010, a federal grand jury indicted Defendant on three counts: possession with the intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D); and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

Defendant moved to suppress the evidence obtained in the course of executing the search warrant, arguing that the search warrant was invalid as it was not supported by probable cause and it inappropriately contained observations made during the prior warrantless protective sweep. The district court held an evidentiary hearing and later denied Defendant's motion to suppress by written order. Defendant pled guilty to all counts of the indictment, but preserved his right to appeal the denial of his motion to suppress.

At the sentencing hearing, the district court indicated that it would depart or vary upward from the Guidelines range of fifty-one to sixty-three months, because the court believed that Defendant's criminal history was under-represented by his criminal history category, that heroin was the most destructive drug on the streets, and that Defendant was likely to repeat his criminal activity and needed to be removed from the public sphere for the safety of the community. Defendant argued against the increase, believing the Guidelines range to adequately represent his criminal history.

The district court sentenced Defendant above the Guidelines range, to seventy-eight months imprisonment and three years of supervised release, and ordered that he pay a special assessment of three hundred dollars. Defendant timely appealed the denial of his motion to suppress and his sentence.

## DISCUSSION

### I.     Motion to Suppress Evidence

In considering a denial of a motion to suppress evidence, we review a district court's findings of fact for clear error and legal conclusions *de novo. United States v. Smith,* 594 F.3d 530, 535 (6th Cir. 2010). "[T]he district court's application of the law to the facts, such as a finding of probable cause, is [also] reviewed *de novo*." *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994) (citing *United States v. Thomas*, 11 F.3d 620, 627 (6th Cir. 1993)). "Where a district court denies a motion to suppress, this Court considers the evidence in the light most favorable to the government." *United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2010) (quoting *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc)) (internal alterations and quotation marks omitted).

Defendant argues that the initial protective sweep of the Glen Drive residence was a warrantless and unlawful search, and thus the observations of the smell of marijuana and the bags of marijuana made during that search should have been excluded from the search warrant affidavit. Without that information, Defendant contends that the search warrant lacked probable cause. The government asserts that the initial entry of the residence was supported by exigent circumstances, namely, the need to perform a protective sweep of the residence to prevent occupants from destroying evidence. We agree with the government and find that the protective sweep was lawful.

5

The Fourth Amendment guarantees individuals the right to be free from "unreasonable searches and seizures" of "their persons, houses, papers and effects." U.S. Const. amend. IV. Searches and seizures must be based on "probable cause, supported by Oath or affirmation." *Id.* The Supreme Court has interpreted the Fourth Amendment to require police officers to obtain search warrants, supported by affidavits that support probable cause, prior to searching an individual's home. *United States v. United States Dist. Ct.*, 407 U.S. 297, 315–16 (1972). "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980).

Of course, the warrant requirement is subject to "a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967); *see United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008). One recognized exception is the "exigent circumstances" exception, where "the exigencies of [a] situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978) (internal quotation marks omitted). "Exigent circumstances are situations where 'real immediate and serious consequences' will 'certainly occur' if the police officer postpones action to obtain a warrant." *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002)).

The Sixth Circuit has identified four areas wherein the Supreme Court recognizes exigent circumstances: hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a subject's escape, and risk of danger to the police or others. *United States v. Williams*, 354 F.3d 497, 503 (6th Cir. 2003); *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994). The second circumstance provides an important exception because of the "urgent need to prevent evidence from

being lost or destroyed." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1511 (6th Cir. 1988); *see United States v. Elkins*, 300 F.3d 638, 655 (6th Cir. 2002). "This need may be particularly compelling where narcotics are involved, for narcotics can be easily and quickly destroyed while a search is progressing." *Sangineto-Miranda*, 859 F.2d at 1511–12 (quoting *United States v. Socey*, 846 F.2d 1439, 1444–45 (D.C. Cir. 1988)) (internal quotation marks omitted); *see also Illinois v. McArthur*, 531 U.S. 326, 331–32 (2001); *Modrell v. Hayden*, 436 F. App'x 568, 578–79 (6th Cir. 2011).

Exigent circumstances permit warrantless entry of a home; however, "the police may not enter a private residence without a warrant unless both 'probable cause plus exigent circumstances' exist." *United States v. McClain*, 430 F.3d 299, 304 (6th Cir. 2005) (citing *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam) and *United States v. Chambers*, 395 F.3d 563, 572 (6th Cir. 2005)). Probable cause exists where, given the totality of the circumstances, there is a reasonable grounds for the belief of wrongdoing, which is "supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990); *United States v. Brown*, 449 F.3d 741, 745 (6th Cir. 2006). Where an officer believes that he must enter a private residence without a warrant to prevent the immediate destruction of contraband, he must demonstrate: "1) a reasonable belief that third parties are inside the dwelling; and 2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order." *Sangineto-Miranda*, 859 F.2d at 1512.

In this case, the police officers were led to the Glen Drive residence after a report from a reliable, confidential informant indicated that a large-scale drug transaction would occur in the Cleveland area. Hakim, an individual believed to be a part of the drug transaction, was seen

traveling to two hotels to exchange a large bag with other targeted individuals. Directly after the transaction, Hakim went to the Glen Drive residence and left fifteen to twenty minutes later. When subsequently searched, officers found $66,000 and smelled a "very strong odor of raw marijuana" emanating from the car.

Officers also observed Defendant leaving the Glen Drive residence and, when Defendant was subsequently searched, discovered that he had marijuana in his car. After Defendant left the residence, the officers also observed two individuals arrive at the home, stay for ten to twenty minutes, and then leave. When subsequently searched, it was discovered that one of the individuals had a lengthy criminal drug history.

Based on the evidence of Hakim's participation in the large-scale drug transaction and his stop at the residence, the smell of marijuana emanating from Hakim's car after leaving the residence, the presence of marijuana in Defendant's car after leaving the residence, and the fact that at least four individuals with drug histories arrived at and left the residence for short periods during the officer's surveillance, we find that the officers had a reasonable belief that marijuana was located at the Glen Drive residence.

We also credit the officer's belief that one or more persons remained at the Glen Drive residence. The police did not know how many people were in the house at the time of their arrival, but they observed that the lights and a television remained on. They also observed a number of people entering and exiting the house. Those observations led them to conclude that at least one individual remained in the house. Although the fact that a television and lights remained on are not conclusive evidence that someone is in the home, it gave the officers more than a "mere suspicion" of occupancy, which is sufficient to form a basis of reasonable belief. *See Bennett*, 905 F.2d at 934.

8

Moreover, the officers were aware that Hakim and the two other individuals taken into custody after leaving the Glen Drive residence would soon be released from custody and the traffic stop, respectively, after being questioned about narcotics and their connection with the Glen Drive residence. Upon release from custody, they would be able to contact the individual(s) believed to be in the house and instruct them to destroy the narcotics. We find that the officers thus had "a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order." *Sangineto-Miranda*, 859 F.2d at 1512. The exigent circumstances exception applies, and we find that the officer's initial entry for the protective sweep was constitutional.

We also determine that even if the initial protective sweep was unconstitutional and the observations obtained during that sweep were removed from the search warrant, there was sufficient remaining evidence in the search warrant affidavit to support a finding of probable cause.

A search warrant may be issued only if officers can demonstrate probable cause that a search is justified. U.S. Const. amend. IV; *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). An adjudicator issuing the warrant must have a "substantial basis for concluding that probable cause existed." *Laughton*, 409 F.3d at 747 (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). "This Court has explained that probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)) (internal quotation marks omitted).

Officer Payne's search warrant affidavit outlined the information from the reliable, confidential informant of the large scale drug transaction of March 17, 2010 and noted that the

9

informant's assertions were corroborated. The affidavit outlined Hakim's connection to the drug transaction and the Glen Drive residence and the evidence found during the traffic stop of Hakim's vehicle. The affidavit then addressed Defendant's relationship with the Glen Drive residence and the evidence found after he was stopped and the information related to the other two visitors to the residence. The affidavit also noted that a neighbor occupying the duplex home attached to the Glen Drive residence frequently smelled raw marijuana emanating from the residence.

The attesting officer concluded that:

> Based upon the investigation, the information contained herein and also obtained from the [confidential informant], and your affiant[']s training and experience, it is common for large drug transactions to take place utilizing differing and/or multiple locations, different people and in stages due to the people observed entering, exiting, and near [the Glen Drive residence], the large quantity of cash recovered from . . . Hakim and the overwhelming smell of raw marihuana emanating from his vehicle and his entry and exist from the attached garage of [Defendant's] residence your affiant is informed and believes that the house is a distribution point for marihuana . . . .

(Search Warrant Affidavit ¶ 10.)

The affidavit thus contained numerous assertions of fact supporting the officer's conclusion that the Glen Drive residence was a distribution point for marijuana and that narcotics would be found there. Although the affidavit did discuss the observations of marijuana in the initial warrantless protective sweep of the Glen Drive residence, those observations were made in a single, brief sentence. It is true that the allegations of finding the marijuana in the protective sweep would alone be enough to support a probable cause finding, but there is ample evidence in the remaining paragraphs of the affidavit to show the officers' reasonable belief that marijuana would be found at the residence.

We find, therefore, that the district court did not err in denying Defendant's motion to suppress.

## II.    Defendant's Sentence

Defendant also challenges his sentence as procedurally and substantively unreasonable. We review the district court's imposition of sentence under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007); *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009). In considering a district court's application of the Sentencing Guidelines to a defendant's sentence, we review its findings of fact for clear error and legal determinations *de novo*. *Baker*, 559 F.3d at 448.

### A.    Procedural Reasonableness

We must first consider whether the district court committed any procedural error in sentencing Defendant. *Gall*, 552 U.S. at 51. Procedural errors include: "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.*

Defendant argues that his sentence is procedurally unreasonable because the district court (1) failed to adequately explain its decision to sentence Defendant above the applicable Guidelines

range[1] and (2) failed to consider Defendant's arguments under the 18 U.S.C. § 3553(a) sentencing factors.

Under USSG § 4A1.3, a district court may depart upward from a Guidelines range where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3(a)(1). Here, the district court departed upward, because it felt that Defendant's criminal history was under-represented by his criminal history category. The court effectuated the upward departure by increasing Defendant's offense level by four points, rather than increasing Defendant's criminal history category. Although the propriety of this procedure was not raised in the proceedings below or in Defendant's appellate brief, Defendant argued orally that the district court erred in increasing the offense level (a "vertical" increase), rather than the more appropriate action of increasing the criminal history category (a "horizontal" increase). Because this specific issue was not raised in Defendant's brief, it might have been waived on appeal. *Fitts v.*

---

[1]It is unclear whether the court departed or varied upward, because the district court stated that it was doing both. In general, a "variance" occurs when a court invokes its discretion to increase or decrease a sentence based on the § 3553(a) sentencing factors, whereas a "departure" occurs when a court modifies a sentence based on a specific Guideline provision, such as § 4A1.3. *See United States v. Jordan*, 544 F.3d 656, 671 n.12 (6th Cir. 2008). We have held that the terminology used by a district court is not critical, so long as it recognized its discretion to impose a sentence outside of the Guidelines range. *United States v. Herrera-Zuniga*, 571 F.3d 568, 586 (6th Cir. 2009). Here, the district court explicitly invoked USSG § 4A1.3(a)(1) in imposing a sentence above the Guidelines range, which would indicate a departure, but also mentioned the § 3553(a) factors in increasing Defendant's sentence, which would indicate a variance.

Because the district court recognized its ability to sentence Defendant outside of the Guidelines range and because we find that it did not abuse its discretion in imposing Defendant's sentence, we find it unnecessary to determine whether the district court departed or varied upward. However, we will assume, for the sake of argument, that the district court departed upward and was therefore subject to the requirements of USSG § 4A1.3.

*Sicker*, 232 F. App'x 436, 442 (6th Cir. 2007) ("[I]ssues not raised in appellate briefs are deemed waived."); *Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999). In any event, we find that the argument fails. In *United States v. Barber*, 200 F.3d 908 (6th Cir. 2000), we held that the language of USSG § 4A1.3 "does not limit a court to departing in the criminal history category alone and does not prohibit a court from using an increase in the offense level to accomplish the same result." 200 F.3d at 913–14. Moreover, in this case, the ultimate sentencing range would have been the same if the district court had increased the criminal history category rather than offense level. The district court's approach to its ultimate calculation of Defendant's sentence was thus not erroneous.

We also find that the district court fully detailed its reason for departing upward in light of Defendant's criminal history, which it felt was under-represented by the probation officer's calculation. The court engaged in a lengthy discussion of the nature and circumstances of each of Defendant's previous convictions and stated why each was important in its sentencing decision. The court found that the number of prior convictions and the relatively small punishments given for each in relation to the seriousness of the crimes show that Defendant was not easily deterred, was not likely to modify his behavior, and was likely to commit more crimes, particularly drug trafficking. The court heard Defendant's arguments that the criminal history adequately represented Defendant's past, but it rejected that argument on the basis of its analysis.

Furthermore, the district court examined the § 3553(a) sentencing factors, even noting them by name, and applied Defendant's circumstances to each factor. Defendant's primary argument with respect to the sentencing factors is that the district court failed to consider his arguments concerning the representation of his criminal history under § 3553 subfactors (a)(1) and (2).

13

Under § 3553(a)(1), the nature and circumstances of the offense and the history and characteristics of the Defendant, the district court engaged in a lengthy discussion of the facts leading up to Defendant's arrest for the drug and firearm crimes. The court then addressed Defendant's prior record, his propensity for violence, his childhood, education, and employment, and his relationship with his family. The court noted Defendant's false statement to a pretrial services officer, but stated that it would not consider that information in calculating Defendant's sentence. We find this to be a complete explanation under § 3553(a)(1).

Under § 3553(a)(2), the court stated that there was a "need for the sentence imposed" because of defendant's "propensity to continue [to] traffic in drugs is grossly understated by the nature of his convictions as outlined here." (Sentencing Hr'g Tr. 18–19.) The court also noted that Defendant served relatively brief sentences for each of his prior convictions and was not deterred by the prior convictions, because Defendant continued to commit crimes just months after his convictions. The court agreed that some of the prior crimes were only misdemeanors, but found that they still "indicate clear evidence the defendant is a persistent, on-going drug trafficker." (*Id.* 21.) We believe that this analysis sufficiently explained the § 3553(a)(2) considerations.

Because the district court fully considered the § 3553(a) factors and explained its reasoning for imposing a sentence above the Guidelines range, we find that its sentencing procedures were reasonable.

**B.    Substantive Reasonableness**

We next consider Defendant's sentence for substantive reasonableness. "A sentence is substantively unreasonable if the district court 'selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount

of weight to any pertinent factor.'" *Baker*, 559 F.3d at 448 (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). Where, as here, the sentence is outside of the Guidelines range, the Court does not apply a presumption of reasonableness or unreasonableness to the sentence. *Gall*, 552 U.S. at 51. Rather, it gives "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

Defendant argues that his sentence is substantively unreasonable because the district court placed an unreasonable amount of weight on his prior criminal history and on the district court's characterization of the "dangerous" nature of heroin. Defendant contends that USSG § 2D1.1 already incorporates considerations of the nature of heroin, so increasing Defendant's sentence on the basis of the dangers of heroin was unwarranted.

We first find that the district court did not place an unreasonable amount of weight on Defendant's prior criminal history. Although the district court discussed Defendant's criminal history at length, the district court also emphasized other compelling reasons for imposing its sentence and the upward departure. The court admonished Defendant for trafficking heroin, which it considered to be "the most addictive, destructive drug on the streets." The court felt that "nothing [is] more dangerous or deadly than heroin, [as it] creates addicts who then go out and commit crime to feed their habit." The court also found that Defendant's acts of trafficking were not an isolated event. The court next emphasized the need for Defendant to be taken off the streets for the public's safety, to learn that his crimes are wrong, and for time to reject his lifestyle of drug dealing and greed. Defendant concedes that the court had discretion to consider all of these matters, including Defendant's criminal history, in departing upward from the Guidelines range. Because the district

court considered a number of factors in deciding to impose a sentence above the Guidelines range, we find that it did not give unreasonable weight to Defendant's prior criminal history.

We also find that the district court did not abuse its discretion in emphasizing what it believed to be dangerous effects of heroin. In *Spears v. United States*, the Supreme Court held that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a *policy* disagreement with those guidelines." 129 S. Ct. 840, 843-44 (2009) (per curiam); *see Kimbrough v. United States*, 552 U.S. 85, 110 (2007). Following *Kimbrough* and *Spears*, a sentencing court is permitted to consider the nature of certain drugs and its personal disagreement with the guidelines range in deciding a defendant's sentence. *See generally United States v. Montague*, No. 09-5542, 2011 U.S. App. LEXIS 21162, at *9–10 (6th Cir. Oct. 19, 2011). In *Herrera-Zuniga*, we held that a district court's discretion to reject, on policy grounds, an otherwise-applicable provision of the Guidelines is not limited to the crack-cocaine context. 571 F.3d 568, 584 (6th Cir. 2009); *see also United States v. Moore*, 372 F. App'x 576, 579 n.3, 582 (6th Cir. 2010) (stating that *Herrera-Zuniga* "expanded" the scope of *Spears*). Relying on the Supreme Court's decisions in *Kimbrough* and *Spears*, we reasoned this rule "follows inexorably from the [Supreme] Court's holding in *Booker* [*v. United States*, 543 U.S. 220 (2005),] that the Guidelines are advisory only." *Herrera-Zuniga*, 571 F.3d at 585.

Thus, the discretion to reject the Guidelines on policy grounds "applies to all aspects of the Guidelines." *United States v. Cole*, 343 F. App'x 109, 115 (6th Cir. 2009); *see Montague*, 2011 U.S. App. LEXIS 21162, at *10. We find that this naturally includes a district court's discretion to consider the nature of certain drugs—in this case heroin—and decide that the Guidelines do not provide adequate punishment. Defendant admits that, post-*Booker*, the district court has discretion

16

to consider the nature of heroin, but he argues that the district court must describe more than the "vague effect of heroin on the public" in order for its discretion to be substantively reasonable. We disagree that the district court here merely mentioned the vague effects of heroin. The court described heroin's addictive effects, noted that it is essentially "poison," characterized the drug as especially "destructive," "dangerous," and "deadly" compared to other drugs, and stated that heroin addicts are likely to commit crime to feed their habit. Because the district court is permitted to consider the nature of heroin and because it fully described its reasons for believing heroin to be worse than other drugs, it did not abuse its discretion.

Because we find that the district court's imposition of sentence was not procedurally or substantively unreasonable, we affirm Defendant's sentence.

## CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court order denying Defendant's motion to suppress and **AFFIRM** Defendant's sentence.