**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0653n.06

Nos. 13-3850/3851

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 20, 2014
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff – Appellee, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE |
| | ) NORTHERN DISTRICT OF |
| JESSE OWEN RAY and PETER HOWARD, | ) OHIO |
| | ) |
| Defendants – Appellants. | |

BEFORE: GIBBONS, SUTTON, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Appellants Jesse Owen Ray and Peter Howard were charged with conspiracy to possess with intent to distribute approximately six kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(a) (Count 1) and possession with intent to distribute approximately two kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 3). The superseding indictment also sought forfeiture of $82,781.00. The district court denied Ray's and Howard's motions to suppress evidence found during a search of their hotel room. Pursuant to written plea agreements, Ray and Howard entered conditional guilty pleas to Count 1, forfeited any interest in the $82,781.00, and reserved the right to appeal the denial of their motions to suppress. The government agreed to dismiss Count 3 at sentencing. Howard was sentenced to 120 months in prison with eight years of supervised release, and Ray was sentenced to 78 months in prison with four years of supervised release. They now appeal the district

court's denial of their motions to suppress. The cases have been consolidated on appeal. We AFFIRM.

I.

On December 12, 2012, Lieutenant Miguel Caraballo of the Cuyahoga County Sheriff's Office received a call from an unnamed confidential reliable informant (CRI) about activity in Room 112 at the Days Inn Hotel/Motel in Lakewood, Ohio. The informant reported that a white male who regularly stayed at the motel for a few days at a time with "activity in and out of his room" was staying in Room 112 and was seen with four black males and a heavyset black female coming and going from that room. The white male was identified as Ronald Tietjen, a California resident who frequently traveled to Chicago from Cleveland. Lieutenant Caraballo testified that California and Chicago are source locations for narcotics coming to Cleveland, Ohio. Investigation revealed that Tietjen was previously convicted of misdemeanor possession of a controlled substance and smuggling aliens into the United States. Officers attempted to locate Tietjen but were unsuccessful.

On December 13, 2012, the CRI advised Caraballo that the occupant of Room 114, who turned out to be defendant Ray, renewed his stay and paid for another night for the occupants of Room 112. Officers set up surveillance of the motel and observed a heavyset black female, later identified as Tonya Johnson, matching the description of the female described the prior day by the CRI. Officers saw Johnson arrive, enter the Days Inn entrance on the south side of the building, and continue toward the hallway where Rooms 112 and 114 are located. Caraballo testified that Rooms 112 and 114 are on the northwest side of the hallway. Room 112 is the farthest west and is next to a building entrance door. The breakfast room is across from Room 112, and the only other room in that hallway, Room 115, is down the hall and close to the lobby

area. The officers called for assistance with surveillance and two additional detectives set up surveillance where they had a vantage point of the entrance on the west of the building, next to Room 112, and the south parking lot. Although none of the officers followed Johnson, Caraballo testified that the CRI told him that Johnson entered Room 112 or 114. Officers observed Johnson leaving through the building door next to Room 112, proceed to her vehicle with a white bag over her shoulder, and drive away.

Johnson was followed by two officers who observed her making erratic lane changes, driving fast, going through red lights, heading westbound on the highway, exiting, doing a u-turn, and getting back on the highway going eastbound. At approximately 1:50 p.m., officers pulled Johnson over. Her hands were trembling as she told the officers that she was changing lanes because she dropped her cell phone and was trying to locate it while driving. Johnson was observed covering the white bag she carried out of the Days Inn. She was told to exit the vehicle and hesitated before moving bags from on top of her white bag, putting it over her shoulder, and exiting the vehicle. The car was searched by a narcotics-detecting dog, and when the dog alerted, officers searched the vehicle. The white bag contained approximately two kilograms of cocaine packaged in a freezer bag. Caraballo testified that is not the normal packaging method to transport or conceal that amount of drugs, and it looked like it had been broken off from a larger amount.

Johnson was arrested and informed of her *Miranda* rights. She waived her right to have an attorney present during questioning, was interviewed on the scene, and admitted ownership of the two kilograms of cocaine. She initially stated that she was returning from a beauty salon, but later admitted that she was coming from a hotel in Lakewood on Lake Road. The only hotel matching that description is the Days Inn. Although Johnson could not recall the room number,

she told the detective that she went to a room on the first floor at the end of a hallway next to an entrance door. She did not provide the names of the persons she met there, but described one as a light-skinned black male, approximately 30 years old, and the other as a dark-skinned male, wearing a Las Vegas t-shirt and glasses, and approximately 40 years old. She told the officers she received the drugs from these two men in the room, that the cocaine was fronted to her, and that she owed them $42,000.00, which she promised the men she would have in two days. The men had her phone number, and "they would contact her." She further told police that she met with the men at the same hotel the previous day. In a later interview, Johnson also stated that she had met with the two men and a white-skinned man the day before at the hotel and discussed moving cocaine for them.

At the same time Johnson was being interviewed, an undercover detective entered the Days Inn and went to the hallway across from Rooms 112 and 114. He observed that two men occupied each room, that they were known to each other, going in and out of each other's rooms, and provided descriptions of the men that matched those provided by Johnson.

Caraballo then consulted with the Assistant Cuyahoga County Prosecutor in charge of the Cuyahoga County Prosecutor's Office drug unit. She advised that there was sufficient information to obtain a search warrant and that the officers should secure the occupants and premises of Rooms 112 and 114 without a warrant in hand so that evidence would not be destroyed, and then return with a warrant before searching. Caraballo testified that the hotel rooms had access to attached bathrooms that would make it easy for a suspect who knows he is being watched or followed by police to flush the cocaine and leave the premises. Caraballo further testified that he was concerned that the cocaine suppliers received word of the traffic stop because Johnson appeared to be engaging in counter-surveillance and could have made a call or

sent a text message to the suppliers between the time of the stop and when a warrant was obtained. However, there is no evidence that any such communication was made or that Johnson was released from custody following her arrest at the traffic stop.

Officers continued surveillance of Rooms 112 and 114 at the Days Inn following the traffic stop. During that time, hotel cleaning staff cleaned Room 114, and the occupants of Room 114 went to the breakfast room and then to Room 112. After the cleaning, the occupants of Room 114 returned to their rooms. Ray was then observed lying on one of the beds in Room 112. Howard was observed shortly thereafter returning with a white bag believed to contain food and going into Room 114. Howard came out of Room 114 without the bag and entered Room 112.

Caraballo set up a plan to secure the rooms and informed officers that he received authorization to secure the premises without a warrant so that evidence could not be destroyed. He instructed the officers to conduct a protective sweep of Rooms 112 and 114, stop, and then wait for a search warrant. Caraballo also made arrangements to obtain room keys for both rooms and had a ram on hand in case there were problems with entry. Canine officers were assigned to the windows outside Rooms 112 and 114 in case an occupant tried to leave through a window. The canine was outside the premises and did not enter Room 112 or 114 during the initial entry.[1] Caraballo was responsible for both rooms but assigned to Room 112. At approximately 3:09 p.m., he knocked on the door and announced "police." Receiving no answer, the officers tried to use the key card several times without success, and a ram was used to make entry. Officers assigned to Room 114 received no response after they knocked and were able to use the room

---

[1]Ray argues that a narcotics-sniffing canine was used during the initial sweep. However, the record demonstrates that the canine officer was outside the hotel during the initial sweep, and the dog was not brought in until after the warrant issued.

key to enter. Caraballo testified that he was concerned about the destruction of evidence between the initial knock and entry into the room, and that one of the men inside the hotel rooms might have a gun given the amount of cocaine sold to Johnson.

When Caraballo and other officers entered Room 112, they encountered Ray and Howard. Both were arrested for violations of state drug laws, given their *Miranda* warnings, detained, and handcuffed. A protective sweep of the premises was conducted during which officers checked for any other persons in the room or bathroom. Caraballo testified that neither he nor the other officers lifted up the mattresses on the beds, and the entire sweep took about a minute. No cocaine or money was found during the protective sweep. Ray and Howard were taken to the breakfast room across from Room 112, and Caraballo left to get a search warrant with Officer Ben Meder.

Ray testified to being removed from Room 112 and handcuffed. He was taken from his room to a police car outside the building, kept there for about 10 to 15 minutes, and was then brought back into the building and placed in the breakfast room. Ray did not testify to seeing the officers conducting any further search of the room or finding either cocaine or money. Howard testified that he was handcuffed and removed to the breakfast room across from Room 112. He further testified that while being transported from the breakfast room to a police vehicle, and during his return to the breakfast room, he was able to glance into Room 112 for two to three seconds in passing and twice saw a white see-through plastic bag containing currency sitting on the bed. Howard did not see the bag with cocaine. Howard did not know the precise time he saw the money sitting on the bed, but he believed it was approximately thirty minutes after he was removed from Room 112. Howard testified that he did not see any officers move mattresses off the beds when he was removed from the room.

Caraballo obtained a search warrant at approximately 6:05 p.m. according to normal procedure and was present when the judge signed the warrant. Caraballo did not attempt to obtain a telephonic warrant. The search warrant recounted the facts learned by the officers during the investigation. Caraballo notified the officers back at the Days Inn that he was on his way with the search warrant and instructed them not to start the search until he arrived with the warrant. When he arrived, Caraballo instructed the officers to photograph any evidence as it was found and allow the canine officer to search prior to any detective searching. Officers executed the search warrant at approximately 6:15 p.m. In Room 112, where Caraballo was present, the canine officer commanded the canine to search for narcotics, and the dog indicated in several locations throughout the room. The officers performed a systematic search in which cocaine and a large white plastic bag of currency later determined to contain approximately $76,000.00 were located under a mattress that sat on a box-shaped frame. The money and cocaine could not be reached without lifting the mattress. Caraballo testified that if someone were to put their head on the floor to look under the bed, they would not have been able to see the currency without lifting the mattress. The government produced photographs of the cocaine and bag of money as they were found under the mattress as well as an inventory list stating that the suspected cocaine and "large sum of currency" were both found under the northwest bed. The inventory sheet is signed by the inventory officer.

Caraballo further testified that based on Johnson's "deceptive indicators" he believed Johnson was a courier bringing the drugs to someone else and was trying to protect the person the cocaine was going to. However, the search warrant does not state that Johnson was a courier; rather, it states that Johnson was fronted the cocaine and told the men she would make payment of $42,000.00 two days later.

II.

This court reviews a district court's factual findings in a decision on a motion to suppress for clear error and its legal conclusions de novo. *United States v. Galaviz*, 645 F.3d 347, 352 (6th Cir. 2011) (citing *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009)). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Adams*, 583 F.3d at 463). "When a district court has denied a motion to suppress, this Court reviews the evidence in the light most likely to support the district court's decision." *Id.*

III.

A.

Ray and Howard argue that the initial protective sweep of Room 112 was unlawful. Although warrantless entries into a person's home are *per se* unreasonable under the Fourth Amendment, the Supreme Court has held that a warrantless entry to prevent the destruction of evidence may be permissible if it is based on probable cause and supported by exigent circumstances. *See United States v. Lewis*, 231 F.3d 238, 241 (6th Cir. 2000). Under the two-pronged test developed in this circuit, a warrantless entry to prevent the destruction of evidence is justified if the government demonstrates: "1) a reasonable belief that third parties are inside the dwelling; and 2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order." *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988).

We need not address whether the officers had a sufficient basis to proceed to enter the hotel rooms without a warrant because we conclude both that the information obtained in the

initial search was not necessary to secure the warrant and that all evidence assertedly discovered during the sweep would have been discovered during the later search pursuant to the warrant.

B.

Assuming the initial sweep of Room 112 was unlawful and the observations obtained during that sweep must be removed from the affidavit in support of the search warrant, there was sufficient remaining evidence in the search warrant affidavit to support a finding of probable cause.

The standard of review for determining the sufficiency of a search warrant affidavit "is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)).

> In order to conclude that an affidavit establishes probable cause, the issuing judge must find that "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." [*Illinois v. Gates*, 462 U.S. 213, 238 (1983)]. . . . To meet the nexus requirement of probable cause, "the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). In other words, "the affidavit must suggest 'that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of the property is suspected of a crime.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

*Berry*, 565 F.3d at 338. The inquiry requires that the magistrate or judge review the totality of the circumstances "to make a practical, common-sense" determination whether probable cause is present. *Rodriguez-Suazo*, 346 F.3d at 644 (quoting *Gates*, 462 U.S. at 238). "The issuing judge

or magistrate 'may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept." *Id.* (quoting *United States v. Caicedo,* 85 F.3d 1184, 1192 (6th Cir. 1996)).

Here, the search-warrant affidavit described meetings between Tietjen, four men, and a female in Room 112 on December 12th, as well as corroborating information from Johnson, who is named in the affidavit, that she went to the hotel on December 12th and met with the same men from whom she purchased two kilograms of cocaine shortly before she was stopped on the 13th. In addition, the affidavit includes a description of police surveillance observing Johnson earlier on the 13th in the vicinity of Rooms 112 and 114 and then leaving the Days Inn with the white bag containing the cocaine. It was thus reasonable for the issuing magistrate to draw the inference that the cocaine came from Room 112. Further, based on the amount of cocaine, the $42,000.00 Johnson said she would pay for the cocaine two days later, and Ray's and Howard's continued presence in Room 112, it was reasonable for the magistrate judge to infer that additional drugs, drug paraphernalia, money, or records would be found in the room. Simply put, the affidavit established a nexus between the cocaine possessed by Johnson and Room 112 and established "a fair probability that contraband or evidence of a drug crime" would be found in Room 112. *See Berry*, 565 F.3d at 339(internal quotation marks and alteration omitted); *see also United States v. Johnson*, 351 F.3d 254, 258-59 (6th Cir. 2003).

The significant information in the search warrant affidavit was not obtained from the initial entry into Room 112 when it was secured, but from a confidential informant, the officers' observations, and Johnson. The only additional fact in the affidavit related to Room 112 was Howard's identity (Ray's identity was already known because he rented one room and paid for

both rooms), and Howard had already been observed during surveillance and described by Johnson, even if not known by name. There was probable cause to search Room 112 regardless of knowledge of Howard's identity. Because police had "abundant probable cause in advance of their entry to believe that there was a criminal drug operation being carried on," *Segura v. United States*, 468 U.S. 796, 810 (1984), "[w]hether the initial entry was illegal or not is irrelevant to the admissibility of the challenged evidence because there was an independent source for the warrant under which that evidence was seized." *Id.* at 813-14. Exclusion of evidence as derivative or "fruit of the poisonous tree" is not warranted here because of that independent source. *Id.* There were sufficient facts in the search warrant affidavit to support probable cause absent information from the initial entry, and the district court did not err in denying the motion to suppress. *Cf. United States v. Johnson*, 457 F. App'x 512, 518 (6th Cir. 2012) (holding district court did not err in denying motion to suppress even if the initial protective sweep was unconstitutional and the observations obtained during the sweep were removed from the search warrant because there was sufficient remaining evidence in the search warrant affidavit to support a finding of probable cause).[2]

Defendants next argue that the district court's factual determination that Room 112 was not searched until after officers obtained a search warrant was clearly erroneous. Putting aside that the court's factual determination was supported by adequate evidence, and assuming arguendo that officers searched for and found the bag of money prior to the issuance of a search warrant, the evidence discovered during that assertedly illegal search would have been

---

[2] Ray argues that because there was a lack of probable cause to arrest Ray and Howard, their arrests should not have been included in the search-warrant affidavit. However, only Ray and Howard's identity and detention, not their arrests, were included in the search-warrant affidavit. Even assuming their arrests were included in the affidavit, under *Johnson*, 457 F. App'x at 518, the warrant was supported by probable cause based on information obtained before the initial entry took place.

discovered during the later lawful search, and the second search would have inevitably occurred pursuant to the valid warrant. "The Supreme Court and our circuit have applied the [inevitable discovery] doctrine in several cases where, like this one, a potentially illegal search was followed by a search conducted in accordance with a valid search warrant premised on evidence of probable cause developed independently of the initial search." *United States v. Bowden*, 240 F. App'x 56, 62 (6th Cir. 2007) (citing *Murray v. United States*, 487 U.S. 533, 541–43 (1988); *Segura*, 468 U.S. at 813–16; *United States v. Keszthelyi*, 308 F.3d 557, 574 (6th Cir. 2002)). As in *Bowden*, the officers here collected information prior to the allegedly illegal search that, by itself, sufficed to establish probable cause for the second search. *See id.* Moreover, the officers had already formed the intent to obtain a search warrant before they commenced the search. *See id.* Accordingly, the district court did not err.

## C.

Finally, Ray challenges the district court's failure to conduct an evidentiary hearing on his Sixth Amendment right to counsel and the district court's denial of access to the money seized in this case to pay counsel. This court reviews the question whether a defendant waived his right to appeal his sentence in a valid plea agreement de novo. *United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004). In the instant case, Ray entered into a conditional plea agreement in which he waived the right to appeal these issues. The plea agreement states that Ray discussed his constitutional rights and the consequences of pleading guilty in this case with counsel, had sufficient time and opportunity to discuss all aspects of the case with counsel, was satisfied with counsel and the legal assistance provided, and entered into the agreement knowingly and voluntarily. Further, at the change of plea hearing, the district court reviewed the plea agreement with Ray in detail and confirmed his understanding of the terms of the

agreement.  Accordingly, we hold that Ray has failed to reserve these issues for appeal.  *See id.* (upholding appeal waiver where the record demonstrated the waiver was part of the plea agreement, appellant had an opportunity to read and review the plea agreement with counsel, appellant was informed in open court that he waived his right to appeal his sentence, and the district court found that he made a knowing waiver of those rights); *United States v. McGilvery*, 403 F.3d 361, 362–63 (6th Cir. 2005) (same).

## IV.

For the reasons stated above, we AFFIRM the decision of the district court.